1  OLIVIER A. TAILLIEU (SBN 206546)
     *o@taillieulaw.com*
2  RAFFI V. ZEROUNIAN (SBN 236388)
     *rz@taillieulaw.com*
3  **THE TAILLIEU LAW FIRM LLP**
   450 N. Roxbury Drive, Suite 700
4  Beverly Hills, CA 90210
   Telephone: (310) 651-2440
5  Facsimile: (310) 651-2439

6  Attorneys for Plaintiff/Counter-Defendant, MELIAN LABS INC.

7

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 | **MELIAN LABS INC.**, a Delaware corporation, | Case No. 4:13-cv-04791-SBA |

11 | Plaintiff, | **JOINT LETTER BRIEF FOLLOWING ORDER REGARDING JULY 7, 2014 DISCOVERY LETTER** |

12 | v. |

13 | **TRIOLOGY LLC**, a Delaware limited liability company, and DOES 1-10, |

14

15 | Defendants. |

16

17 | **TRIOLOGY, LLC,** a Delaware limited liability company, and DOES 1-10, |

18

19 | Counter-Plaintiffs, |

20 | v. |

21 | **MELIAN LABS INC.,** a Delaware corporation, |

22 | Counter-Defendant. |

23

24

25

26

27

28

0133-1002

1

**ATTESTATION OF MEET AND CONFER**

Pursuant to the Court's Standing Order and Judge Westmore's Order Regarding July 7, 2014 Discovery Letter, counsel for the parties hereby attest that they met and conferred by telephone July 11, 2014 and held follow-up communications and correspondence regarding the issues raised in this Joint Letter.

Dated: July 29, 2014                    Respectfully submitted:

                                        **THE TAILLIEU LAW FIRM LLP**
                                        OLIVIER A. TAILLIEU
                                        RAFFI V. ZEROUNIAN

                                    By: /sRaffi V. Zerounian/
                                        Attorneys for Plaintiff and Counter-Defendant
                                        MELIAN LABS INC

Dated: July 29, 2014                    Respectfully submitted:

                                        **DLA PIPER LLP (US)**
                                        GINA DURHAM
                                        AMANDA MORGAN
                                        JULIA BRIGHTON

                                    By: /s/ Gina Durham
                                        Attorneys for Defendant and
                                        Counter-Plaintiff TRIOLOGY, LLC

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to Local Rule 5-1(i)(3), the filer hereby attests that concurrence in the filing of this document has been obtained from Gina Durham which shall serve in lieu of her signature on the document.

Dated:  July 29, 2014                   THE TAILLIEU LAW FIRM LLP
                                        OLIVIER A. TAILLIEU
                                        RAFFI V. ZEROUNIAN
                                        By:/s Raffi V. Zerounian/

                                        Attorneys for Plaintiff and Counter-
                                        Defendant MELIAN LABS INC.

0133-1002

2

**THE TAILLIEU LAW FIRM** LLP

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

July 31, 2014

**VIA ECF**
Hon. Kandis A. Westmore
United States Magistrate Judge
United States District Court, Northern District of California
Oakland Courthouse, Courtroom 1 – 4th Floor
1301 Clay Street, Oakland, CA 94612

Re:   ***Melian Labs, Inc., v. Triology, LLC*** (Case No. 13-CV-04791 SBA (KAW))
      *Letter re: Response to Order Regarding July 7, 2014 Discovery Letter*

Dear Judge Westmore:

Pursuant to Your Honor's Order of July 8, 2014 ("Discovery Order") (Dkt. No. 44) concerning the July 7, 2014 Discovery Letter (Dkt. No. 42), Plaintiff and Counter-Defendant Melian Labs, Inc. ("Plaintiff" or "Melian") and Defendant and Counter-Plaintiff Triology, LLC ("Defendant" or "Triology") submit this joint letter regarding Triology's responses to Plaintiff's First Set of Requests for Production of Documents ("Document Request(s)" or "Request(s)"). This joint letter provides the parties' respective arguments and supporting authority regarding these issues.

## BACKGROUND

### Plaintiff's Introduction

It is now clear that Triology is not taking its discovery obligations seriously. This is troubling because Triology initiated this dispute by sending Melian a cease-and-desist letter in the United States. Despite Melian's service of its Document Requests over five months ago (on February 14, 2014), to date, Triology has only produced approximately **89** pages of documents. Surprisingly, Defendant's document production did not include even one email. Triology claims that Melian is infringing its trademark rights and that Triology has superior rights as the senior user, but Triology has refused to meaningfully participate in discovery—including absolute refusals to produce documents directly tied to the priority issue at the heart of this dispute.

Triology's delay tactics have severely prejudiced Plaintiff's ability to meaningfully prosecute its case and defend against Triology's counterclaims. Until last week, Triology concealed from Plaintiff that its principal witnesses are all based in foreign countries, outside of the reach of U.S. subpoenas. Further, despite serving its first discovery objections over three months ago (on April 9, 2014), Triology last month provided a brand new reason it refuses to provide merchant or user data, namely, due to "Australian data privacy laws." Triology has no explanation for failing to raise this alleged objection months earlier (and with five offices in Australia, its counsel had ample resources to consult upon receipt of Plaintiff's discovery in February). As explained in greater detail below, this refusal to produce documents is improper.

Without the identity of Triology's alleged U.S. users, Melian cannot depose these alleged consumer or merchants to determine the veracity of Triology's claims. Melian asked Triology to stipulate to an extension of the discovery period to allow Melian to take foreign discovery (which is necessary given Triology's recent disclosure that its main witness for U.S. advertising efforts is a former employee living in Australia) and discovery in the U.S. regarding Triology's users and customers (once the Court rules on that issue), but Triology refused. Triology is attempting to delay handing over vital information to prejudice Melian's ability to take follow-up discovery. Triology's attempts to run down the clock must come to an end.

Defendant also attempts to blame Plaintiff for its own delays and failure to comply with its discovery obligations, but the reason for the multiple meet-and-confer conferences was

1

THE TAILLIEU LAW FIRM LLP

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

Defendant's refusal to cooperate or provide its position in writing. In contrast, Plaintiff made a
document production of over 1,000 pages (including emails) before Defendant produced any
documents, and Plaintiff has continued to supplement its production. Below, Triology writes
that "Melian produced e-mail, but none of it contains any dates, which renders it entirely
unusable." (emphasis original). This representation regarding the lack of dates is patently false.

## Defendant's Introduction

Plaintiff misstates facts and selectively omits the details of negotiation that has taken place over
numerous meet and confer calls where both sides have attempted to clarify and limit the scope
of discovery requests.  Triology has produced some documents, and is in the process of
reviewing and producing more documents, on a rolling basis and in agreement with Plaintiff.
Melian is at exactly the same stage of the process.  Triology has supplemented its Responses to
Melian's Requests for Production, providing as much information as it could reasonably gather
on which categories of requested documents exist and will be produced. Therefore, as discovery
is ongoing, it is premature and a waste of the Court's and the parties' time and resources to file a
motion to compel documents that Triology has already agreed to produce.

The primary reason it has taken Triology this long to get to this point in the discovery process is
that it has been bogged down at every step by harassing tactics used by Melian, presumably in an
attempt to force a settlement on Melian's terms.  In reality, this is a simple priority dispute that
requires a relatively narrow factual inquiry.  Triology and Melian have both adopted the
trademark "MYTIME," and the only issue of real dispute in this litigation is which party used
the mark in U.S. commerce first.  The parties spent the early part of discovery trying to reach a
settlement. When Triology would not concede to Melian's terms, Melian served well over a
hundred document requests, which were way out of bounds for the narrow matter at issue in
this case. Triology has been cooperating in good faith with Melian to work down from Melian's
extreme initial discovery posture, and has attempted to respond to each request made by
Melian's counsel for more information.  A total of **six** meet and confer conference calls have
taken place, only **one** of which was focused on the discovery Triology propounded on Melian.

Triology appreciates its independent discovery obligations and has undertaken forensic
collection and processing of its own documents, in order to produce them in the proper format
and with metadata required by this Court's discovery rules and customary practice.  Melian has
not done so, which has required Triology to spend time and resources identifying problems with
Melian's production, requesting fixes and replacements individually, and re-organizing Melian's
documents locally to enable development of Triology's case.  Melian has produced 7 large pdf
documents, which Triology's counsel has re-unitized into 579 separate "documents," using its
best guesses.  None of Melian's documents appear to have been collected forensically to
preserve proper metadata fields.  Melian produced some e-mail, with the date information
withheld, which rendered it entirely unusable, as dates are of paramount importance in a priority
dispute.  Triology requested replacement productions containing dates twice, and Melian did not
comply for weeks, until it finally produced "replacement" emails on July 29, 2014 within hours
of filing the initial version of this letter.  The replacement set is also problematic, so Triology
will need to request another replacement.  Likewise, Melian has produced Excel documents in
an unreadable TIFF format, rather than the commonly-used native production format.  Counsel
has requested these documents be produced in native, but Melian has not done so.  Triology will
meet and confer with Melian separately about these issues, but raises them with the Court to
give context to Plaintiff's claims about Triology's "delay."

The preparation and filing of this joint letter has caused further diversion from time that could
have otherwise been spent productively working through discovery.  Specifically, Melian initially
filed its original version of this letter early in the morning on July 30, 2014.  However, when
Triology's counsel reviewed the letter that had been filed at Docket #47 later in the day, it
learned that Melian had filed a version of the "joint letter" that Triology had never seen, and

2

which included additional substantive arguments about the purported discovery disputes. Melian finally acquiesced and withdrew the letter only after a time intensive dialogue including email and telephonic requests to withdraw and discuss the new arguments raised by Melian.

Finally, it is disingenuous to say that "Triology concealed from Plaintiff that its principal witnesses are all based in foreign countries," as Plaintiff's counsel was put on notice by Triology's counsel at least as early as December 2013 that it needed to contact Australia when responding to issues about the litigation.  Furthermore, it has been well known to Melian's counsel since the beginning of the litigation that Jon Eaves, Triology's CEO, is based in Australia. Despite this, Triology has agreed to produce Mr. Eaves for deposition in San Francisco and has tried repeatedly to arrange a date for this deposition.  Melian's counsel doggedly insists upon one week in August that it finds most convenient.

## Plaintiff's Statement of Background Facts

Plaintiff's background facts and the recitation of the parties' initial meet-and-confer efforts are set forth in Plaintiff's July 7 Discovery Letter (Dkt. No. 42). After this Court issued an order requiring the parties to meet-and-confer again with helpful guidance regarding the parties' further efforts, counsel conferred on July 11, 2014. Defendant sought to further delay matters and obfuscate its position. Specifically, in response to a request that Triology clarify whether it is willing to produce any further documents requested in the meet-and-confer conference, counsel for Triology wrote on July 15 that "we are in the process of supplementing our production.  We indicated that we would get back to you early this week with a time frame on the supplemental production.  Accordingly, we write to inform you that a small supplemental production will be made this week, but the email processing and review will likely not be complete until next week." Almost two weeks have passed, and Defendant has only produced an additional 13 pages of documents, bringing its entire production to a grand total of 89 pages. Again, Triology has not produced even one email, which means that Triology's document production has no context whatsoever.

Although Triology refused to provide a written clarification of its position or serve supplemental written responses for weeks, in an attempt to remedy its violations of the Federal Rules of Civil Procedure, Triology surprised Melian with a set of supplemental written responses sent by email at 4:03 pm the day that Triology was to provide its portion of the Joint Letter. Melian is pleased that Triology finally clarified some of its discovery responses, but Melian would have preferred receiving written clarification in the weeks following the Court's Discovery Order. Triology complains that Melian made a few changes to its own portions of the Joint Letter before it was filed on July 30. Melian removed the entire sections that were mooted by Triology's written supplemental responses, which Triology gave Melian permission to do. Melian then made minor changes to its sections to reflect Triology's service of its written supplemental responses and to respond to a few issues raised by Triology. Triology knew that Melian would need to make minor revisions to the Joint Letter, but never asked Melian to review the final version of the letter, which Melian informed Triology it planned to file that evening (Triology sent its portion at 7 pm on July 29th). When Triology complained about the filing, Melian responded within 10 minutes and worked to alleviate Triology's concerns Finally, Triology has not served a privilege log.

## Defendant's Statement of Background Facts

Triology has said repeatedly that it will produce e-mails and other responsive documents, and is in the process of doing so.  There is no logical reason to file a motion to compel documents that a party has already agreed to produce.  Triology has served Supplemental Responses to Melian's First Set of Requests for Production, updating Melian on the progress of its document search and collection. Contrary to Melian's statement above, Triology never refused to produce supplemental written responses in advance of this letter.  In fact, in the pre-letter meet and

3

THE TAILLIEU LAW FIRM LLP

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

confer, Triology informed Melian that it had Supplemental Responses prepared, and had held them only because completion of Triology's email processing might require additional supplementation. Moreover, Triology has engaged in no attempts to "obfuscate." Rather Triology has spent hours upon hours in "meet and confer" telephone calls with Melian. The Supplemental Responses track much of the same information that was previously provided to Melian in those "meet and confer" telephone calls.

The only issue that arguably may be of genuine dispute at this point and thus ripe for Court intervention is the protective order dispute regarding Australian privacy law issues. A couple of Melian's requests seek "personal information" stored on servers in Australia that is subject to Australian privacy laws. Triology has offered on numerous occasions a straightforward proposal to amend the protective order to address concerns of compliance with Australian privacy law and speed production of responsive materials. Melian has simply refused to stipulate to the proposed amendment, without providing any substantive grounds for its refusal. This appears to be another attempt by Melian to manufacture a dispute between the parties where there should be none.

At this stage, it is premature to request a privilege log—it is unreasonable for Plaintiff to create a dispute regarding the lack of a privilege log when Triology (and Melian) have not yet produced the bulk of our documents.

## MELIAN'S MOTION TO COMPEL

### A. Triology's Failure to Produce Documents it has Agreed to Produce

In response to Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 18, 20, 21, 23, 24, 25, 26, 29, 30, 33-64, 67-69, 71, 72, 76, 77, 79, 80, 81, 82, 83, 85, 86, 89, 90, 97, 98, 99, 100, 103, 104, 105, 106, 107, 108, 111, 114, 115, 116, 117, 118, 121, 123, 125, 126, and 127, Triology agreed to produce responsive documents as follows: "Subject to and without waiving the foregoing General and Specific objections, Triology will produce responsive, non-privileged documents, within a reasonable period of time and after a reasonable search of likely custodians, that are in its possession, custody, or control."

#### Plaintiff's Position

General Objections. Triology has asserted several boilerplate general objections to each of Melian's Document Requests, in addition to specific objections. Triology has failed to identify whether it has withheld any documents based upon any specific or general objections. Consequently, Melian cannot fully proceed with its continuing factual investigation and is therefore prejudiced by Triology's failure to comply with its discovery obligations. In its July 2 letter, Triology stated that it is "willing to confirm" that it is not withholding any documents on the basis of its objections, but three weeks have passed and Triology finally served supplemental written discovery responses with certain clarifications just hours before Triology sent its portion of this joint letter to Melian. Further, Triology's discovery responses served on July 29 still do not make clear whether responsive documents exist and when Defendant expects to complete its document production. Since Triology has refused to stipulate to an extension of the close of discovery, Defendant's lack of transparency is causing prejudice to Melian.

Moreover, Triology's meager document production to date indicates that Triology has not produced all responsive, unprivileged documents. For example, Melian's Request No. 1 seeks "ALL DOCUMENTS identified in YOUR initial disclosures." Upon review of Triology's 89-page document production, Plaintiff's counsel did not locate *any* documents falling within several of the nine categories of documents identified in Triology's Amended Initial Disclosures that Triology admits are in its "possession, custody or control" and represents that it may use to support its claims and defenses in this suit. To remedy this prejudice, Melian respectfully

4

requests that the Court order Triology to immediately produce all requested documents and identify which, if any, Triology is withholding and its purported justification of each.

### Defendant's Position

As Triology has stated repeatedly, its document collection and processing is ongoing.  As Plaintiff's counsel knows, this takes time.  Indeed, Plaintiff's counsel reported on July 24, 2014 that Plaintiff itself was "in the process of going through thousands of emails to find documents responsive to Triology's discovery request (sic)," which it has also not yet produced.  Triology will continue to supplement its responses in good faith to keep Melian informed of its progress. Any dispute about these documents is premature.

**B. Request No. 19:**  This request seeks documents relating to Triology's use of any advertising or public relations firms or design firms. Triology previously agreed to produce one document—an agreement with its marketing firm—and then later argued that its representation about using a marketing firm was incorrect.

> Request No. 19: ALL DOCUMENTS that constitute or REFER OR RELATE to correspondence, email or any other COMMUNICATIONS between YOU and any advertising or public relations agency or firm employed by YOU, or on YOUR behalf, to assist in the advertising, marketing and offering of services under or in connection with the MYTIME FITNESS MARK.

### Plaintiff's Position

Documents relating to marketing, advertising and promotion of the trademarks at issue are routinely requested and produced in trademark infringement disputes, as they concern the parties' marketing channels—one of the Ninth Circuit's *Sleekcraft* factors, which guide the Court's decision in whether a likelihood of confusion exists.  *AMF Inc. v. Sleekcraft Boats*, 599 F. 2d 341,353 (9th Cir. 1979) (holding "[c]onvergent marketing channels increase the likelihood of confusion").  Communications concerning Triology's advertising and marketing activities are clearly relevant to the parties' claims and defenses, which Triology belatedly concedes below. Triology has taken a very narrow reading of this request—splitting hairs between the definitions of a "design firm" versus an "advertising firm"—but given Triology's claims that no responsive documents exist in response to this request, Melian will not push the issue here.

### Defendant's Position

Triology did not employ an "advertising or public relations agency or firm," so there are no such communications.  Triology handled advertising, marketing and promotion in-house, through its former employee James Ward.  In addition to relaying this information in meet and confer communications, Triology also confirmed it in its Responses to Melian's First Set of Interrogatories (*See* Response to Interrogatory No. 11).  This is a manufactured dispute concerning a category of documents Plaintiff's counsel is well aware does not exist.

Triology's Supplemental Responses to Melian's First Set of Requests for Production confirms that Triology has no documents responsive to Melian's narrowly-phrased request.  However, Triology has collected Mr. Ward's data and will produce all responsive documents, including e-mail, to the extent that they exist following a reasonably diligent search.  Triology also intends to produce other documents concerning its marketing, advertising and promotions, but these documents will not be in the form of communications with an advertising or PR agency because there was none. Furthermore, Melian's request for evidentiary preclusion is improper.  Triology has agreed to produce documents concerning its marketing, advertising and promotion.  Evidentiary preclusion is a harsh sanction that generally is not imposed where the failure to provide discovery was either substantially justified or harmless. *See Lewis v. Ryan*, 261 F.R.D. 513, 522(S.D.Cal.2009) (noting that exclusion of evidence under Rule 37(b)(2) is not appropriate where the failure to produce documents was either "substantially justified or harmless"); *Rooney v. Sierra Pac. Windows*, 10-CV-

5

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

00905-LHK, 2011 WL 2149097 (N.D. Cal. June 1, 2011)(same).  The failure to produce
documents that do not exist is undoubtedly "substantially justified."

Plaintiff's position, above, is that this request seeks documents in connection with design
services, yet the word "design" is not present in the Request.  Triology did retain the services of
a design firm, addressed below in No. 21.

**C. Request No. 21:**  This request seeks documents relating to Triology's communications
regarding the development of Triology's myti.me website and MYTIME FITNESS mobile
application. Triology has only agreed to produce one document—an agreement with its marketing
firm.

> Request No. 21: All DOCUMENTS that constitute or REFER OR RELATE to
> correspondence, including but not limited to email, or any other communications
> between YOU and any design firm employed by or for YOU to create, enhance,
> develop, or work on any website or other promotional materials or advertisements
> offering or referring to services offered under or in connection with the MYTIME
> FITNESS MARK.

### Plaintiff's Position

This is another standard document request in a trademark infringement case. Melian agreed to
narrow this request without prejudice by changing "All DOCUMENTS that constitute or REFER
OR RELATE to correspondence, including but not limited to . . ." to "All correspondence,
including but not limited to . . ." Despite this concession, Triology has refused to produce any
responsive documents.

This request seeks documents vital to the parties' claims and defenses because they may provide
evidence that supports or contradicts Triology's claims about priority, and whether a likelihood
of confusion exists.  Triology claims in its interrogatory responses that "[b]y the latter part of
November 2012, Triology had assisted prospective clients in creating schedules and allowed
them to use Triology's online system at secure.myti.me to demonstrate its capabilities."
(Response to Interrogatory No. 1). Triology also claims that it engaged in beta testing of its
MYTIME FITNESS mobile application in the U.S. (*Id.*)  Melian has the right to test the veracity
of Triology's allegations concerning its alleged priority based on the described activities, and
others.

Indeed, Triology's representations in its Amended Initial Disclosures concede the relevance of
these requests.  Triology represented that it possesses documents that it intends to rely
concerning "the licensing, exploitation, use and sale of products incorporating the MYTIME
trademarks," "the nature and extent of advertising, marketing and promotion of the MYTIME
trademark and the products incorporating the MYTIME trademark," and "the expenditures
relating to the advertising, marketing and promotion of the MYTIME trademark and the
products incorporating the MYTIME trademark."  (Def.'s Amend. Initial Disc. p.3-4.) Triology
also identified multiple witnesses who possess discoverable information on these same topics in
its Initial Disclosures (none of which are located in the U.S., and only one works for Triology).

Triology's failure to provide Melian with any of the requested documents and information and
intentional refusal to articulate when Triology will ultimately produce any documents clearly
prejudices Melian's ability to proceed with meaningful fact investigation concerning the critical
issue of priority.  Melian respectfully requests that the Court order Triology to immediately
produce all responsive documents, without objection.  Triology's limitation in its supplemental
written responses to only those documents "on which it intends to rely in this litigation . . . ." is an
impermissible restriction.

### Defendant's Position

6

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

Upon further discussion with its client, counsel for Triology learned that Flipnet Pty. Ltd. ("Flip"), whose agreement with Triology has already been produced, provided design services to Triology (not marketing services as previously thought). This information was clarified in Triology's Responses to Melian's First Set of Interrogatories. It is untrue that Triology has refused to produce documents responsive to this request. In its Supplemental Responses to Melian's First Set of Requests for Production, Triology clarified that it will produce documents, including communications with its design firm, Flip, on which it intends to rely in this litigation.

## D. Request No. 85:

Triology has refused to produce any documents in response to Request No. 85, which seeks documents that would show the number of transactions that were made through Triology's MYTIME FITNESS mobile application.

> Request No. 85: DOCUMENTS sufficient to show the number of transactions that have been made through the TRIOLOGY MYTIME MOBILE APPLICATION, with references to the date(s) of each such transaction.

### Plaintiff's Position

Triology's supplemental written response (served on July 29) stating that it "will produce non-privileged responsive documents" is not proper, since Triology has not agreed to produce these documents by a date certain and has not stated what is meant by a "reasonably diligent search."

### Defendant's Position

Triology will produce all non-privileged responsive documents in its possession, custody or control to the extent any are identified after a reasonably diligent search, which is still in process. Triology confirmed this in its Supplemental Responses. Rolling document production is ongoing.

## E. Request No. 68:

Request No. 68 seeks marketing information, including social media posts (e.g., from Facebook).

> Request No. 68: Copies of each of YOUR advertisements for goods or services offered in connection with the MYTIME FITNESS MARK, whether or not presently in use, whether paid or unpaid, including but not limited to all print, billboard, radio, TV, and Internet advertising, including but not limited to all posts on social media sites such as Facebook, LinkedIn, or Twitter.

### Plaintiff's Position

Triology cannot refuse to produce documents simply because they are from "publicly available sources." Rather, Triology must produce all documents within its custody, possession, or control. Thus far, Triology has produced some documents from Facebook, but other responsive documents exist, and Triology should produce them. For example, Triology has a Twitter page (@TriologyApps), a profile on CrunchBase.com, and a LinkedIn profile. Triology should produce all U.S. marketing materials.

### Defendant's Position

Triology has produced the entire contents of its Facebook page, as well as copies of its advertisements. More marketing-related documents may be produced as investigation and discovery are ongoing, which Triology confirmed in its Supplemental Responses. In further meet and confer prior to filing of this letter, Triology agreed to produce additional content from social media forums. This is another non-dispute.

## F. Request No. 86:

7

**THE TAILLIEU LAW FIRM** LLP

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

This request seeks documents reflecting the content of any websites that have featured Triology's MYTIME mark. Triology has refused to produce all documents.

Request No. 86: ALL DOCUMENTS reflecting the content of each website, webpage, or other material displaying YOUR use of the MYTIME FITNESS MARK on the Internet from the first use of such website to the present.

**Plaintiff's Position**

This request again is directed to the critical issue of priority. Triology appears to base much of its priority case on its use of MYTIME on its websites, including but not limited to secure.myti.me. By not producing all responsive documents, Triology is attempting to prejudice Melian's ability to defend against Triology's priority case (See Position Re: Request No. 21). It does not appear that Triology has produced any documents that show the content of secure.myti.me, let alone sufficient documents which demonstrate the capabilities of Triology's websites during the relevant period for priority. The fact that Triology served supplemental written responses on July 29 stating that it "will" produce responsive documents at some undetermined point in the future is not helpful, especially since the discovery period is set to close soon and Triology has refused to agree to an extension of the close of discovery.

**Defendant's Position**

Triology will produce all non-privileged responsive documents in its possession, custody or control to the extent any are identified after a reasonably diligent search, which is still in process. Triology confirmed this in its Supplemental Responses. Melian's statements are untrue. Triology provided Melian with a screen shot of its 2012 website when we mediated the case in April, and Plaintiff's counsel has been reminded of this on a number of meet and confer calls. Triology will continue to supplement its production with responsive documents, but does not believe there is a dispute here.

**G. Request No. 87:**

These requests seek documents concerning the users of Triology's MYTIME FITNESS offerings in the U.S. Triology has refused to produce any documents.

Request No. 87: DOCUMENTS sufficient to identify all PERSONS that have profiles in, or whose businesses or offering of goods or services are listed in, the TRIOLOGY MYTIME MOBILE APPLICATION, including the date of account registration and/or creation.

**Plaintiff's Position**

This request is directed to obtaining evidence concerning the quality and nature of Triology's alleged use of the MYTIME mark in the United States, an essential query in determining trademark priority among the parties. Since much of Triology's work to create and promote its MYTIME FITNESS mobile application occurred in Australia, to establish priority, Triology will need to show that its marketing efforts targeted U.S. consumers.

As noted in Professor McCarthy's treatise, "[t]o acquire ownership of a trademark, one must actually use the designation as a mark in the sale of goods or services. No trademark rights accrue to someone who merely selects a designation without actual use of it in the advertising or sale of goods." 2 McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed. rev.) (hereinafter "McCarthy"). Moreover, "no priority of use is created as of the date that a party announced to a few persons that he intended to use a certain designation as a mark." *Id.* Further, "[n]ominal or token sales to relatives and personal friends do not constitute a bona fide commercial use of a trademark. Such secretive and non-open transactions are not proper 'trademark' usage since the relevant class of prospective buyers is not exposed to the mark." *Id.* In *Chance v. Pac-Tel Teletrac,*

8

*Inc.* 242 F.3d 1151 (9th Cir. 2001). The Ninth Circuit set forth factors for determining whether pre-sale activities constitute prior use under its totality of circumstances test, including:

> the genuineness and commercial character of the activity, the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, the amount of business transacted, and other similar factors which might distinguish whether a service has actually been "rendered in commerce."

*Id.* at 1158.

The extent of Triology's actual U.S. customer base is unclear.  The dates that customers established accounts through Triology's MYTIME mobile application or website is therefore relevant to show whether and to what extent Triology offered its services, as well as the extent of Triology's alleged common law trademark right, both of which directly bear on the question of use of the MYTIME trademark in U.S. commerce. Melian has a right to determine whether the alleged U.S. users are in fact located in the U.S., and has a right to verify that these users actually used Triology's MYTIME FITNESS website or mobile application.

Any concerns regarding the production of customer personally-identifying information can be addressed through the parties' protective order, which includes an attorney's eyes only designation. (Dkt. No. 36). Melian has explained this to Triology on several occasions. Further, Triology failed to timely bring a motion for protective order, and did not even raise its privacy objection until months after it served its written document request responses. Therefore, Triology has waived its objections on these grounds.

In this lawsuit, the parties agreed to the "Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets" approved by this District.  Since this protective order is routinely used to protect some of the most sensitive trade secrets in the Bay Area, it is more than adequate to address Triology's privacy concerns. Triology's unusual demand that Melian agree to "indemnify Triology against liability in Australia for failure to abide by Australia's data privacy law" is improper, and Triology has failed to adequately explain the propriety of its most recent demand for an amendment to the stipulated protective order. Moreover, Triology maintains its refusal despite the fact that Plaintiff only seeks information concerning U.S. customers.  Regardless of the ultimate merits of Triology's new objection, the cited Australian laws are wholly irrelevant to Triology's production of the requested documents, because—according to Triology itself—the Australian Privacy Principles only "applies to protect customers **in Australia** from any improper disclosure of their records." (emphasis added) (June 19, 2014 email from G. Durham to R. Zerounian). Triology has yet to explain why treatment of this "personal information" regarding U.S. consumers, if designated as confidential under the protective order, would violate Australian privacy laws.

Triology is an Arizona LLC with headquarters in that state, and presumably has servers there. Further, much information is stored "in the cloud," and this personal information does not necessarily reside only "in Australia." Finally, in its privacy policy on its website (http://myti.me/privacy-policy.php), Triology openly discloses to its consumers that it gathers "personal information." Triology should be ordered to immediately produce documents responsive to this request.

### Defendant's Position

As discussed several times with Plaintiff's counsel, the Australian Privacy Act and Australian Privacy Principles apply to protect both Australian and U.S. consumers' data, as long as the data is

**THE TAILLIEU LAW FIRM** LLP

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

stored on Australian servers.  Triology's data is stored on Australian servers.  Plaintiff's statements above that information is stored "in the cloud" and this information does not necessarily reside only in Australia are incorrect, and Plaintiff's counsel has been informed of these facts.  Melian's claim that the existing protective order is sufficient to protect this information is also incorrect. Personal information protected and regulated in Australia does not have to be, and is often not, "confidential information," as that term is defined in the protective order.  Australian privacy law obligates Triology to ensure that personal information of consumers is protected prior to disclosure outside of Australia, by requiring that disclosure may only be made to parties outside of Australia who agree to comply with Australian privacy law in their handling and treatment of the protected information.

Triology has proposed a limited and reasonable amendment to the protective order in this case to address the Australian privacy laws, as follows (additions in italics):

Section 1:

1.  PURPOSES AND LIMITATIONS
Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles, including *the obligation to comply with the Australian Privacy Act and Australian Privacy Principles for disclosed 'personal information' (as defined in the Australian Privacy Act).* The parties further acknowledge, as set forth in Section 14.4, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

Section 3:

3.  SCOPE
The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, *except in respect of the obligation to comply with the Australian Privacy Act and Australian Privacy Principles for disclosed 'personal information' (as defined in the Australian Privacy Act),* the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

Section 7.1:

7.1       Basic Principles. A Receiving Party may use Protected Material that is

10

disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. ***Each Receiving Party also agrees to comply with the provisions of the Australian Privacy Act and Australian Privacy Principles (with the exception of Principle 1) in relation to the Protected Material, as if it were operating and holding the Protected Material in Australia.*** When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION)."

Triology has advised Plaintiff to seek independent legal counsel regarding the obligations of compliance with the Australian Privacy Principles in litigation with an Australian entity. Plaintiff has refused to consent to the protective order amendment, or even to discuss it and provide its reasoning for refusal to cooperate. Triology has some of the data requested here, but cannot produce it until the privacy issue is resolved. Triology understands that it may not include exhibits or declarations to this submission pursuant to the governing local rules. However, if the Court would like a declaration from Australian privacy counsel attesting to the above Australian privacy law issues, Triology would be happy to provide such declaration immediately upon the Court's request.

## H. Request No. 88:

This request seeks documents concerning the businesses that use Triology's MYTIME FITNESS mobile application or website in the U.S. to conduct commerce. Triology has refused to produce any documents.

Request No. 88: DOCUMENTS sufficient to IDENTIFY all PERSONS who have sold any goods or provided any services, or have offered to do so, via the TRIOLOGY MYTIME MOBILE APPLICATION, including but not limited to any distributors, retailers, merchants, personal trainers, fitness professionals, and/or wholesalers.

### Plaintiff's Position

The documents responsive to this request are vital to the parties' claims and defenses for the same reason as the documents requested in Request No. 87.

### Defendant's Position

Same as above, for Request No. 87.

## I. Request No. 96:

This request seeks documents relating to Triology's beta testing of its MYTIME FITNESS mobile application. Triology has refused to produce any documents in response to this request because it claims that this request "seek[s] documents that are not relevant . . . ." (Letter from G. Durham to R. Zerounian on July 7, 2014).

Request No. 96: DOCUMENTS sufficient to show, for each version of the TRIOLOGY MYTIME APPLICATION that YOU tested using a testing service such as TESTFLIGHT, the following: Total number of unique users; number of invitations sent, date of invitations sent, names of people invited, email addresses of people invited, email messages sent to people invited, install status of people invited, Team Developer status of people invited, number of installs completed by people invited by version number, date of installs by people invited, and location(s) of the users.

### Plaintiff's Position

This request seeks documents regarding details of Triology's beta-testing process, including the total number of unique users and number of installs completed of the mobile app. Melian agreed

11

THE TAILLIEU LAW FIRM LLP

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

to narrow this request (without prejudice) to documents showing activities prior to March 23, 2013, but Triology still refuses to produce any documents. For Triology to claim such documents are irrelevant is inconceivable, because Triology's claim of priority is based on its alleged beta testing activities. These requested documents will show whether and to what extent Triology was actually using the MYTIME mark in U.S. commerce, and thus they are essential to the parties' claims and defenses. Triology has not seriously argued that producing them will be unduly burdensome, and thus should be ordered to immediately produce them. The fact that certain responsive documents may have been produced by a third party through a subpoena does not absolve Triology of its obligation to produce all responsive documents in its custody, possession, or control.

### Defendant's Position

Triology stands on its objection that the documents sought in this request are not relevant to the narrow priority dispute in this case. In any case, Melian has requested, and received, a large quantity of this data directly from Test Flight under subpoena.

### J. Request No. 110:

This request seeks documents relating to Triology's beta testing of its MYTIME FITNESS mobile application. Triology has refused to produce any documents based upon relevance.

> Request No. 110: DOCUMENTS sufficient to show all features, bugs and chores tracked by project management software for the TRIOLOGY MYTIME MOBILE APPLICATION with time or date stamps.

#### Plaintiff's Position

See Plaintiff's Position to Request No. 96 and 109 above. The requested documents will show the extent and nature of Triology's alleged beta testing. Melian agreed to narrow this request (without prejudice) to documents showing activities prior to March 23, 2013, but Triology still refused to produce any documents. Triology does not claim that this request is burdensome.

#### Defendant's Position

Plaintiff's characterization of this request is disingenuous. Documents relating to the details of internal software development and bug fixing have no relevancy to whether a trademark was being used in commerce. This is purely an attempt by Melian to harass Defendant.

### K. Request No. 108:

This request seeks documents relating to Triology's beta testing of its MYTIME FITNESS mobile application. Triology wrote that "Triology agrees to produce analytic documents in its possession, custody, or control, but such agreement should not be deemed an admission that such documents convey information in the identical form sought in these Requests." (Letter from G. Durham to R. Zerounian on July 7, 2014).

> Request No. 108: ALL DOCUMENTS that REFER OR RELATE TO any analytics programs and products utilized at any point by TRIOLOGY to measure customer usage or server utilization of the TRIOLOGY MYTIME MOBILE APPLICATION or any website that uses the MYTIME FITNESS MARK.

#### Plaintiff's Position

Melian agreed to limit this request (without prejudice) to documents showing activities prior to March 23, 2013.This request is relevant because it seeks the production of documents relating to, amongst other things, the actual number of users of the MYTIME FITNESS mobile application and visitors to Triology's MYTIME websites, which relate to priority. Triology has not argued that producing these documents will be unduly burdensome. It is unclear what Triology means by its

12

above "agreement" to produce "analytic documents," and any attempts by Triology to unilaterally limit its responses in such a fashion are impermissible. Further, Triology's caveat that its response "should not be deemed an admission that such documents convey information in the identical form sought in these Requests" is improper.  Melian did not agree to the supposed limitation described below by Triology, which should produce documents responsive to this request as written (and narrowed by Melian).

**Defendant's Position**

This is not "unilateral" limiting of the scope of Melian's request.  On a lengthy meet and confer call on June 25, 2014, Melian's counsel clarified that his request was targeted to analytics data collected by Triology prior to March 13, 2013.  Triology agreed to locate and produce this data. We are in the process of doing so, which we have told Melian's counsel.  Melian is trying to create a dispute here where there is none.

**L. Requests No. 114:**

This request seeks documents relating to the number of visitors to Triology's MYTIME FITNESS websites. Like its response to Request No. 108, Triology agreed to produce "analytic documents" with the caveat that "such agreement should not be deemed an admission that such documents convey information in the identical form sought in these Requests."

Request No. 114: DOCUMENTS sufficient to show the daily unique visitors, visits, and source of traffic to any website using the MYTIME FITNESS MARK, including but not limited to www.myti.me, broken down by page/screen of the website from the first use of said website(s) until the present.

**Plaintiff's Position**

See position regarding Request No. 108 above. Melian did not agree to the manufactured "clarification" mentioned in Defendant's below response.

**Defendant's Position**

It is unclear what "caveat" Plaintiff refers to.  Again, Triology is proceeding in reliance on the good faith statements of Plaintiff's counsel on the meet and confer call of June 25, 2014.  Triology is not "unilaterally" limiting of the scope of Melian's request.  On a lengthy meet and confer call on June 25, Melian's counsel clarified that his request was targeted to analytics data collected by Triology prior to March 13, 2013.  Triology agreed to locate and produce this data.  We are in the process of doing so, which we have told Melian's counsel.  Melian is trying to create a dispute here where there is none.

**M. Requests No. 115:**

This request seeks documents relating to the number of users of Triology's MYTIME FITNESS mobile app. Like its response to Request Nos. 108 and 116, Triology agreed to produce "analytic documents" with the above caveat.

Request No. 115: DOCUMENTS sufficient to show the daily unique visitors, visits, and source of traffic to TRIOLOGY MYTIME MOBILE APPLICATION from the first use of said mobile application until the present.

**Plaintiff's Position**

See position regarding Request No. 108 above.

**Defendant's Position**

Same as for Request No. 114, above.

**N. Request No. 124:**

**THE TAILLIEU LAW FIRM LLP**

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

This request seeks documents that identify Triology's customers or users of Triology's mobile application/website in the U.S. Triology has refused to produce any responsive documents.

> Request No. 124: DOCUMENTS sufficient to IDENTIFY every one of TRIOLOGY's customers or users of TRIOLOGY MYTIME MOBILE APPLICATION or any other service using the MYTIME FITNESS MARK, including but not limited to name, email, phone number, date and time of account creation, customer type (merchant/consumer), and login/session activity prior to December 5, 2012.

### Plaintiff's Position

See position regarding Request No. 87 above. This request is narrowly tailored to discover facts directly relevant to Triology's alleged priority in this action, and overlap in merchants and users between the parties.

### Defendant's Position

Same as for Request No. 87, above.

## O. Document Request No. 22:

Request No. 22 seeks documents relating to Triology's development of its MYTIME mobile application. Triology has refused to produce any documents in response to this Request.

> Request No. 22: All DOCUMENTS that constitute or REFER OR RELATE to the development or creation of the TRIOLOGY MYTIME MOBILE APPLICATION, including but not limited to any COMMUNICATIONS with any software development firm employed by YOU or performing work on YOUR behalf.

### Plaintiff's Position

See Plaintiff's Position to Request No. 87 above. The progress that Triology had made in the development of its MYTIME FITNESS mobile application is relevant to the question of priority. When Melian launched its fully functioning MYTIME business in December of 2012, Triology had, on or about January 11, 2013, changed its www.myti.me webpage to state "Welcome to the home of MyTime. We still need a bit of time to finish our app, but in the meantime, you can register below to receive updates instantly!" Documents evidencing the status, functionality and availability of Triology's mobile application in or around the date on which Melian claims priority are therefore critical to determining which party has superior rights to the MYTIME mark. Such documents will be unveiled in response to this request.

The fact that Triology produced a document by Flip setting forth the timetable for development that it *hoped* to achieve does not mean that Triology actually met those milestones. The record shows Melian launched its MYTIME.com website *before* Triology launched its MYTIME FITNESS mobile application in March of 2013. The documents produced to date are unclear about whether Triology actually had a mobile application with sufficient functionality to establish "use" in U.S. commerce in connection with the actual offering of services. McCarthy, § 16:7 ("To establish priority, use of the mark must be in a bona fide sale sufficient to create an impact on the buying public."); *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d at 1159.

### Defendant's Position

Triology has produced its agreement with its design firm, FlipNet Pty. Ltd. ("Flip"), which contains time table information for development of the MYTIME mobile application. However, production of information beyond the foregoing is simply not warranted. Contrary to the misleading description provided above, the development details of Plaintiff's mobile application are not relevant to the question of priority. Plaintiff and Triology each have websites and mobile applications in connection with which they have used the MYTIME mark. With respect to the mobile applications, Plaintiff's counsel has conceded on numerous calls (and the factual record is

14

clear based on Melian's own documents referencing the "other MyTime App" that Triology launched its MyTime mobile application *before* Melian launched its MyTime application. In light of this inconvenient fact, the true intent behind Plaintiff's overbroad request appears to be to conduct a fishing expedition, blindly hoping that it will turn up some admission that Triology's application is not of equivalent quality to Melian's application. However, such an inquiry is completely irrelevant to a trademark priority dispute. The only real question in dispute is who offered products or services under the mark first --- not who had a better application at any given time (which is a highly subjective inquiry which has no place in a trademark law analysis). The case law cited above by Plaintiff is inapposite as it relates to an inquiry into bona fide sales, and lends no support to Plaintiff's desire to explore internal development details, which is not relevant to trademark ownership.. Moreover, as Plaintiff is well aware, any software development process includes numerous updates to code. Triology is a software developer, and thus the extreme breadth of Melian's response could sweep in almost every document in Triology possession. When such proportionality considerations are weighed against the relevancy (or lack thereof) of development details, Melian's request is improper on its face.

## P. Document Request No. 73:

This request seeks Triology's profits and losses for its MYTIME services in the U.S.

> Request No. 73: DOCUMENTS from which YOUR profits and losses on each of YOUR goods sold or services provided in connection with the MYTIME FITNESS MARK can be determined.

### Plaintiff's Position

Troublingly, Triology writes that it has no revenue information because "the [mobile application] download is free." Yet this representation appears to be false based upon Triology's own website (at www.myti.me), which states that Triology charges $20 a month for a subscription. If one person had signed up, there should be $20 of revenue. Nevertheless, Triology produced a number of "profit & loss" statements, but it is not clear if this relates to operations in the U.S. Further, Triology did not produce a statement for every month that it has allegedly been in existence, including any statements relating to matters after June of 2013.

### Defendant's Position

Triology has produced all documents in its possession, custody or control responsive to this request, which is confirmed in its Supplemental Responses. Moreover, contrary to the reckless assertion above, Triology has made no false representation to Melian regarding revenues as there are no U.S. revenues to date to report.

## Q. Document Request No. 74:

This request seeks documents sufficient to show Defendant's gross revenues relating to its MYTIME offerings in the U.S. The full text of the request is as follows:

> Request No. 74: DOCUMENTS from which YOUR gross revenues for your sales of each of YOUR goods sold or services provided in connection with the MYTIME FITNESS MARK can be determined.

### Plaintiff's Position

See position regarding Request No. 73 above.

### Defendant's Position

Same as for Request No. 73, above

15

**THE TAILLIEU LAW FIRM LLP**

450 N. Roxbury Dr., Suite 700
Beverly Hills, CA 90210
t. 310.651.2442
f. 310 651.2439

Very truly yours,

/s/ *Raffi V. Zerounian*
The Taillieu Law Firm LLP
Attorneys for Melian Labs, Inc.

/s/ *Gina Durham*
DLA Piper
Attorneys for Triology, LLC

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to Local Rule 5-1(i)(3), the filer hereby attests that concurrence in the filing of this document has been obtained from Gina Durham which shall serve in lieu of her signature on the document.

Dated:  July 31, 2014

THE TAILLIEU LAW FIRM LLP
Olivier A. Taillieu
Raffi V. Zerounian
By:/s Raffi V. Zerounian/

Attorneys for Plaintiff and Counter-Defendant MELIAN LABS INC.

16